Eanes-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 





NO. 3-92-568-CV





JAMES SNYDER, INDIVIDUALLY AND AS BENEFICIARY 


AS THE SOLE STOCKHOLDER OF PHOENIX MASONRY OF TEXAS, INC., 


AND PHOENIX MASONRY OF TEXAS, INC.,


A DISSOLVED TEXAS CORPORATION,



 
 APPELLANTS


vs.





EANES INDEPENDENT SCHOOL DISTRICT, 


S. DON ROGERS, AND WILLIAM H. WHEELESS,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 447,952-A, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 




INTRODUCTION


 This appeal arises from a lawsuit brought by James Snyder, as beneficiary of
Phoenix Masonry of Texas, Inc., and Phoenix Masonry of Texas, Inc. (collectively, "Snyder"),
appellants, alleging that Eanes Independent School District ("Eanes") breached two construction
contracts between Phoenix and Eanes. Snyder later named as additional defendants S. Don
Rogers, the superintendent of Eanes, and William H. Wheeless, the Director of Support Services
for Eanes, alleging that they tortiously interfered with the contracts and negligently caused
Phoenix financial injury. By two separate orders, the trial court rendered summary judgment in
favor of each of the defendants; Snyder appeals. As to each defendant, we will affirm the
judgment of the trial court.



BACKGROUND


 On February 15, 1984, Phoenix and Eanes entered into a written construction
contract whereby Phoenix was to perform masonry work in connection with the construction of
a fine arts facility at Westlake High School. On November 13th of that same year, Phoenix and
Eanes entered into a second contract for work on library and classroom additions at Westlake
High School. Both contracts consist of forms printed by the American Institute of Architects and
included documents titled "Standard Form of Agreement Between Owner and Contractor" (the
"Standard Agreement") and "General Conditions of the Contract for Construction" (the "General
Conditions"). The Standard Agreement provided for monthly progress payments by Eanes to
Phoenix based upon certificates for payment to be issued by the architect. The General Conditions
contained a provision stating that disputes were to be resolved through arbitration.

 In July 1985, a dispute arose. The architect withheld certification for payment
because of claimed mortar discoloration and unsatisfactory workmanship. Accordingly, Eanes
stopped paying the monthly progress payments to Phoenix. Despite this dispute, Phoenix
continued the work and finished both projects; upon completion, Eanes occupied the buildings. 
In December 1985, Phoenix filed a claim through arbitration to collect payment and damages from
Eanes. On December 26, 1986, the arbitrator signed an award against Eanes and in favor of
Phoenix for $124,915 plus pre-award and post-award interest. Eanes paid the award, including
interest, on February 27, 1987. 

 Snyder filed suit on August 3, 1988, against Eanes and several other defendants
for additional damages related to the construction contracts. (1) Snyder added Rogers and Wheeless
as defendants in its fourth amended original pleading on November 18, 1991. Eanes, Rogers, and
Wheeless moved for summary judgment. On January 14, 1992, the trial court granted Rogers and
Wheeless's motions and on July 17, 1992, granted Eanes's motion. By six points of error, Snyder
appeals from the rendition of summary judgment for the defendants..



DISCUSSION AND HOLDING


The Summary Judgment in Favor of Eanes


 The order granting summary judgment for Eanes did not specify on which grounds
the court relied. When an order does not give a specific ground for granting the summary
judgment, the nonmovant on appeal must show why each ground asserted in the motion is
insufficient to support the order. Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989);
McCrea v. Cubilla Condominium Corp., 685 S.W.2d 755, 757 (Tex. App.--Houston [1st Dist.]
1985, writ ref'd n.r.e.). To establish entitlement to summary judgment on Snyder's breach-of-contract claims, Eanes had the burden of conclusively negating at least one essential element of
each claim or establishing an affirmative defense as a matter of law. See Citizens First Nat'l Bank
v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex. 1976).

 In point of error two, Snyder contends that the trial court erred in granting
summary judgment for Eanes because genuine issues of material fact exist. In Snyder's response
to Eanes's summary-judgment motion, Snyder admits that its fourth amended original petition
contains several allegations already resolved in arbitration. Snyder alleges, however, that three
acts or omissions by Eanes were breaches of the construction contracts not resolved in arbitration: 
(1) failing to pay the arbitration award in a timely manner; (2) contacting Phoenix's bonding
company; and (3) failing to send a default notice to Phoenix. Snyder claims that genuine issues
of material fact remain with regard to each of these alleged acts.

 Eanes contends that the complained-of conduct did not breach any contractual
provision. Furthermore, Eanes contends that any alleged damages were not contemplated by both
parties at the time of contract formation and, thus, are not recoverable pursuant to the rule in
Hadley v. Baxendale, 156 Eng. Rep. 145 (1854).

 When a cause of action is based on breach of contract, the plaintiff must show that
a contract existed between the parties, that the contract created duties, that the defendant breached
a duty under the contract, and that the plaintiff sustained damages as a result. City of Corpus
Christi v. Bayfront Assocs., Ltd., 814 S.W.2d 98, 103 (Tex. App.--Corpus Christi 1991, writ
denied); Producer's Grain Corp. v. Lindsay, 603 S.W.2d 326, 328 (Tex. Civ. App.--Amarillo
1980, no writ). The parties do not dispute that a contract was formed and that duties were
created. The parties dispute, however, whether the alleged acts or omissions of Eanes constituted
a breach of any contractual duty.



A. Payment of the Arbitration Award

 Snyder contends that Eanes breached the contracts by failing to pay, in a timely
manner, the arbitration award rendered on December 26, 1986. Eanes paid the award by
February 27, 1987. Snyder asserts that the contract required Eanes to pay the arbitration award
within seven days after awarded. In the alternative, Snyder claims that the contracts are
ambiguous regarding the payment deadline of the arbitration award and that this ambiguity raises
a fact issue as to a reasonable time for payment of the award, thus precluding the rendition of
summary judgment. 

 The meaning to be given language used in a contract is a question of law for the
court, and such meaning shall be given as will carry out and effectuate, to the fullest extent, the
parties' intentions. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Snyder relies on
section 9.7.1 of the General Conditions, which states in part, "[I]f the Owner does not pay the
Contractor within seven days after the date established in the Contract Documents any amount .
. . awarded by arbitration, then the Contractor may, upon seven additional days' written notice
to the Owner, the Architect and the Construction Manager, stop the Work until payment of the
amount owing has been received." 

 Snyder's argument that section 9.7.1 of the General Conditions provides a seven-day period for payment of arbitration awards fails in two respects. First, the section does not
include a covenant to pay an award within a specified time; rather, it provides the contractor with
a right to stop work if payment is not made. A "condition" in a contract is a clause which has for
its object the suspension, rescission, or modification of the principal obligation. George v.
Houston Boxing Club, Inc., 423 S.W.2d 128, 132 (Tex. Civ. App.--Houston [14th Dist.] 1967,
writ ref'd n.r.e.). Although no particular words are necessary for the existence of a condition,
such terms as "if," "provided that," "on condition that," or some other phrase that conditions
performance usually connote an intent for a condition rather than a promise. Criswell v. European
Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990); Schwarz-Jordan, Inc. v.
Delisle Constr., 569 S.W.2d 878, 881 (Tex. 1978); Hohenberg Bros. Co. v. George E. Gibbons
& Co., 537 S.W.2d 1, 3 (Tex. 1976); Landscape Design & Constr., Inc. v. Harold Thomas
Excavating, Inc., 604 S.W.2d 374, 377 (Tex. Civ. App.--Dallas 1980, writ ref'd n.r.e.). Here,
section 9.7.1 merely provides Phoenix the right to stop work until payment is made. Hence, this
provision is not applicable because at the time the arbitration award was rendered, Phoenix had
already completed both projects. Furthermore, section 9.7.1 does not apply because it states that
the owner (Eanes) must pay an award within seven days after the date established in the Contract
Documents; the contract fails to provide a payment schedule with respect to arbitration awards. 
Because this contract provision is not applicable, Snyder's argument that there was a seven-day
period for payment is without merit.

 We also conclude that the contracts are not ambiguous with respect to arbitration
award payments. Whether a contract is ambiguous is a question of law for the court, considering
the contract as a whole and in light of the circumstances existing at the time the contract was
formed. Reilly v. Rangers Management, Inc., 727 S.W.2d 527, 529 (Tex. 1987); Coker, 650
S.W.2d at 394. If a contract is so worded that it can be given a certain and definite meaning or
interpretation, it is not ambiguous. Coker, 650 S.W.2d at 393. A writing is ambiguous only
when, after application of pertinent rules of interpretation, the face of the writing indicates
genuine uncertainty as to which meaning of its terms is proper. Capitol Rod & Gun Club v.
Lower Colo. River Auth., 622 S.W.2d 887, 894 (Tex. App.--Austin 1981, writ ref'd n.r.e.). 
Courts are reluctant to imply covenants or duties in a contract in the absence of obvious necessity
or compelling public policy reasons. See English v. Fischer, 660 S.W.2d 521 (Tex. 1983).

 The contracts expressly provide for arbitration awards. Section 7.9.1 of the
General Conditions states that, "[t]he award rendered by the arbitrators shall be final, and
judgment may be entered upon it in accordance with applicable law in any court having
jurisdiction thereof." This section provides that arbitration awards are to be subject to applicable
law. The statute concerning arbitration awards allows a party ninety days after delivery of a copy
of the award to file an application to modify or vacate the award. See Tex. Rev. Civ. Stat. Ann.
art. 237, § B, art. 238, § A (West 1973). Accordingly, the question of whether payment was
made in a timely and reasonable manner is resoved as a question of law, not as a question of fact
for the jury. Because arbitration law allows ninety days to appeal and Eanes paid within sixty-four days, it did not breach the contract in making payment of the arbitration award.

 Furthermore, even if this Court were to find ambiguity in the contract, the issue
of a reasonable time for payment, when underlying facts are undisputed, is an issue of law. KMI
Continental Offshore Prod. Co. v. ACF Petroleum Co., 746 S.W.2d 238, 243 (Tex. App.--Houston
[1st Dist.] 1987, writ denied). Here the facts are undisputed, thus, the court may appropriately
decide the issue of a reasonable time period for payment as a matter of law. It is conclusively
presumed that the parties to a contract knew the law and contracted with reference to it. Inter-Ocean Casualty Co. v. Lenear, 95 S.W.2d 1355, 1358 (Tex. Civ. App.--Dallas 1936, writ
dism'd); see also Wessely Energy Corp. v. Jennings, 736 S.W.2d 624, 626 (Tex. 1987). 
Therefore, any implied reasonable payment period could be no less than the length of time allowed
by law for an appeal of the award. We conclude that as a matter at law, Eanes did not breach any
term of the contract in the timing of its payment.



B. Contacting Phoenix's Bonding Company

 Snyder claims that Eanes had a duty under the contracts to notify Phoenix before
contacting Phoenix's bonding company. Snyder claims that Eanes breached the contract by "filing
a notice of intent to file a bond claim against Phoenix without notice to, and without knowledge
of, [Phoenix]." Snyder admits that there is no express provision in the contracts that prohibits
Eanes from contacting Phoenix's bonding company; however, Snyder urges that we imply a
provision based on other provisions of the contracts, the contracts as a whole, and the facts and
circumstances surrounding the contracts. After examining the contracts and the surrounding
circumstances, we find no basis to imply such a covenant.

 When interpreting a contract, the primary concern of the court is to ascertain and
to give effect to the parties' intentions as expressed in the instrument. Reilly, 727 S.W.2d at 529;
Coker, 650 S.W.2d at 393; TCI Cablevision of Tex., Inc. v. South Tex. Cable Television, 791
S.W.2d 269, 271 (Tex. App--Corpus Christi 1990, writ denied). Implied provisions in contracts
are permitted only on the grounds of necessity. Stalaup v. Eastham, 330 S.W.2d 237, 240 (Tex.
Civ. App.--El Paso 1959, writ ref'd n.r.e.). An implied provision must either arise from the
language used in the contract or be indispensable to effectuate the intent of the parties. Emmord's
Inc. v. Obermiller, 526 S.W.2d 562, 565 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd n.r.e.). 
In this case, necessity does not require an implied covenant. In fact, an examination of the
contract and relevant statutes reveals an intention not to require notice to file a bond claim.

 First, pursuant to section 7.5.1 of the General Conditions, Eanes could require that
Phoenix furnish bonds. Neither this section nor any other provision required Eanes to give
written notice to Phoenix before filing a bond claim. Furthermore, the contracts contain
provisions providing specific instances when written notice is required. If a contract contains an
express covenant upon a subject, no implied covenant can exist as to the same subject. Kingsley
v. Western Natural Gas Co., 393 S.W.2d 345, 350 (Tex. Civ. App.--Houston 1965, writ ref'd
n.r.e.). Moreover, contractors entering into contracts in excess of $25,000 with governmental
entities are required to provide performance and payment bonds. See Act of June 16, 1977, 65th
Leg., R.S., ch. 809, § 1(A), 1977 Tex. Gen. Laws 2027 (Tex. Rev. Civ. Stat. Ann. art. 5160(A),
since amended). The statute also states that the performance bond shall be solely for the
protection of the governmental authority awarding the contract. See Act of June 16, 1977, 65th
Leg., R.S., ch. 809, § 1(A)(a), 1977 Tex. Gen. Laws 2027 (Tex. Rev. Civ. Stat. Ann. art.
5160(A)(a), since amended). Because the law conclusively presumes that the parties to a contract
knew the law and contracted with reference to it, Eanes should be allowed to rely on the
protection of the bond. See Inter-Ocean Casualty, 95 S.W.2d at 1358.

 Because the contracts did not expressly require Eanes to give written notice to
Phoenix and because there is no evidence indicating any necessity requiring an implied duty to
provide written notice, Snyder has not shown that Eanes breached any duty when Eanes contacted
Phoenix's bonding company without prior notice to Phoenix.



C. Failing to Send a Default Notice to Phoenix

 Snyder states in its petition that on February 3, 1986, the architects, who were to
provide proper administration of the contracts, recommended to Eanes that Phoenix be found in
default, and on February 11th, Eanes did in fact find Phoenix to be in default. Snyder contends
that Eanes breached the contracts when it did not give notice that it considered Phoenix to be in
default. The contracts, however, impose no such duty. 

 Snyder cites several provisions in the contracts requiring Eanes to send notice, but
none pertain to notice of default: Section 13.1.1 of the General Conditions discusses work to be
uncovered for observation if "required in writing"; section 13.2.2 states that the contractor shall
correct any defects found within one year after the Date of Substantial Completion after receipt
of a written notice from the owner; and section 14 discusses termination of the contract. None
of these provisions requires Eanes to send written notice to Phoenix when Eanes believed Phoenix
to be in default on the contract. Here, the contract was not terminated, there was no request to
uncover work for observation, and there was no dispute over defects discovered after completion
of the project. Thus, the provisions of the contracts Snyder cites are not applicable. Because the
contract expressly required written notice in certain instances, we decline to imply a notice
requirement in other instances. See Kingsley, 393 S.W.2d at 350.



D. Damages

 Snyder claims that damages it has suffered include loss of contracts, loss of credit,
loss of profits, and ultimately the dissolution of Phoenix, all hinging on the fact that Phoenix's
bonding ability was frustrated. The damages that Snyder claims Eanes caused were not a
contemplated result of any breach by the parties at the time the contract was executed and are
therefore not recoverable pursuant to the rule of Hadley v. Baxendale:



Where two parties have made a contract which one of them has broken[,] the
damages which the other party ought to receive in respect of such breach of
contract should be such as may fairly and reasonably be considered as according
to the usual course of things, from such breach of contract itself, or such as may
reasonably be supposed to have been in contemplation of both parties at the time
they made the contract as the probable result of the breach of it.



156 Eng. Rep. at 145. This is the rule in the majority of American jurisdictions, including Texas. 
See Mead v. Johnson Group, Inc., 615 S.W.2d 685 (Tex. 1981); Jones v. George, 61 Tex. 345,
354-56 (1884). 

 Snyder admits that, at the time the contract was entered into, bonds were not
required for the majority of the projects on which Phoenix bid or contracted. Snyder also admits
that bond requirements did not become prevalent until mid-1985 when the local economy
worsened. In 1984, when the contracts were signed, the parties could not have contemplated that
any frustration of Phoenix's bonding ability would cause the damages sought by Snyder. 
Accordingly, summary judgment was proper because the damages sought were not contemplated
at the time the contract was entered into.

 The summary judgment was proper because Eanes negated the claims that any
breach occurred and that recoverable damages were sustained. For the reasons stated above, we
overrule Snyder's second point of error. 

 Having affirmed the summary judgment as to Eanes on the grounds discussed
above, we do not reach Snyder's third point of error concerning Eanes's affirmative defenses. 



The Summary Judgment in Favor of Rogers and Wheeless


 We now consider the summary judgment in favor of Rogers and Wheeless. In their
joint motion for summary judgment, Rogers and Wheeless raised the defense of limitations. In
order to be entitled to summary judgment based on an affirmative defense, a movant must
conclusively prove all essential elements of the defense. Swilley v. Hughes, 488 S.W.2d 64, 67
(Tex. 1972). In order to be entitled to summary judgment based on the affirmative defense of
limitations, Rogers and Wheeless must prove that the applicable statute of limitations bars
Snyder's claims. See Zales Corp. v. Rosebaum, 520 S.W.2d 889, 891 (Tex. 1975). The two-year
limitations period applies to negligence and tortious interference with contract claims. Tex. Civ.
Prac. & Rem. Code Ann. § 16.003(a) (West 1986); First Nat'l Bank v. Levine, 721 S.W.2d 287,
289 (Tex. 1986); American Centennial Ins. Co. v. Canal Ins. Co., 810 S.W.2d 246, 255 (Tex.
App.--Houston [1st Dist.] 1991, no writ). For a suit to be timely under the two-year statute, it
must be brought within two years following the date the cause of action accrues. Tex. Civ. Prac.
& Rem. Code Ann. § 16.003(a) (West 1986). 

 In point of error six, Snyder contends that Rogers and Wheeless failed to negate
the discovery rule in their motion and, thus, did not conclusively prove that Snyder's claims were
barred by limitations. 

 On November 18, 1991, Snyder amended its pleadings to include Rogers and
Wheeless as defendants, claiming that they were negligent and that they tortiously interfered with
Phoenix's contractual relationships, including but not limited to the contracts between Phoenix and
Eanes. Snyder alleges that Rogers and Wheeless's interference included misstatements and
misrepresentations regarding a breach of contract by Phoenix that did not occur. Snyder contends
that from the end of 1985 until February 27, 1987, its bonding ability was frustrated as a result
of the tortious interference. Snyder also contends that this interference caused Phoenix to lose
several contracts in 1985, 1986, and 1987, and eventually caused the dissolution of Phoenix.

 With respect to tort actions generally, the limitations period begins to run at the
time the duty owed to one person is breached by a wrongful act of another. American Centennial
Ins., 810 S.W.2d at 255. A party's ignorance of material facts or lack of knowledge will not
generally prevent the statute of limitations from running. Id. The discovery rule, however,
provides an exception in some tort situations. 

 When applicable, the discovery rule provides that the limitations period runs from
the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and
diligence, the nature of its injury. Gaddis v. Smith, 417 S.W.2d 577, 578 (Tex. 1967). When
the discovery rule applies to a cause of action, a defendant seeking summary judgment on the
basis of limitations must prove when the cause of action accrued and must negate the discovery
rule by proving as a matter of law that no genuine issue of fact exists as to when the plaintiff
discovered or should have discovered the nature of the injury. Burns v. Thomas, 786 S.W.2d
266, 267 (Tex. 1990); Woods v. Mercer, 769 S.W.2d 515, 518 n.2 (Tex. 1988); Weaver v. Witt,
561 S.W.2d 792 (Tex. 1977). Thus, Rogers and Wheeless were required to negate the discovery
rule only if it applies to the causes of action in Snyder's petition.

 If the discovery rule does not apply, then the statute of limitation bars Snyder's
claims against Rogers and Wheeless because, by Snyder's own admission, any misconduct by
Rogers and Wheeless and any resulting damages occurred no later than February 1987. Snyder
claims, however, that it could not have discovered the conduct of Rogers and Wheeless until
February or July 1990.

 The discovery rule applies only to causes of action that can be characterized as
inherently undiscoverable. American Centennial Ins., 810 S.W.2d at 255. Texas courts have
applied the discovery rule in such actions as fraud, credit libel, medical malpractice, and legal
malpractice due to the inherent difficulty of the injured party in learning of the negligent act or
omission. See Willis v. Maverick, 760 S.W.2d 642 (Tex. 1988) (adopting discovery rule for legal
malpractice cases because of the special relationship between an attorney and client); Kelly v.
Rinkle, 532 S.W.2d 947, 949 (Tex. 1976) (adopting discovery rule when there is false credit
report, due to short limitations period for libel action and unsuspecting injured party); Gaddis,
417 S.W.2d at 580-81 (adopting discovery rule in context of foreign-objects medical-malpractice
cases because of patient's inability to know of negligent act immediately after surgery); Quinn v.
Press, 140 S.W.2d 438 (Tex. 1940) (adopting discovery rule in cases of fraud and concealment). 
In the immediate cause, nothing can be characterized as inherently undiscoverable. In fact, in his
affidavit, James Snyder admits to discovering the involvement of Rogers and Wheeless through
customary pretrial discovery. 

 Even if the discovery rule is applicable, the summary-judgment evidence negates
its effect as a matter of law. In Snyder's petition, the plaintiffs admit knowing of its damages and
the nature of their injury by February 27, 1987. It is undisputed that Rogers and Wheeless
occupied their official positions at Eanes during the entire time of the contract work. In his
affidavit, James Snyder states that in 1986 the available Phoenix bond line was suspended or
terminated and "at that time we were under the impression that the bond line had been cut off as
. . . a direct result of the defaults of the EISD [Eanes] and its representatives." Because Snyder
knew the nature of the injury, the damages, and the parties involved by February 27, 1987, the
cause of action accrued no later than February 27, 1987, even if the discovery rule is applicable. 


 Because Snyder brought claims against Rogers and Wheeless more than two years
after February 1987, we hold that the claims are barred by the statute of limitations. Snyder's
sixth point of error is overruled.

 Because summary judgment in favor of Rogers and Wheeless is appropriate on
limitations grounds, we do not reach Snyder's fourth point of error concerning whether a genuine
issue of material fact exists with regard to the causes of action against Rogers and Wheeless.

 Finally, we conclude that the portions of the affidavits in the summary-judgment
proof complained of in points of error one and five are not necessary to affirm the trial court's
judgment on the grounds discussed above. Accordingly, we do not reach these points of error.



CONCLUSION


 For the reasons above, we affirm the summary judgment in favor of Eanes and the
summary judgment in favor of Rogers and Wheeless.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: August 11, 1993

[Publish]

1.   All other defendants have either been nonsuited or been granted summary
judgments and severed from this cause.